The next case for argument is 22-1284 SRK Technology v. Snap. Good morning, Your Honors. May it please the Court, Vincent Rubino on behalf of SRK Technologies. Your Honors, we're here from a decision in the PTAB where several obviousness findings should be reviewed under the substantial evidence test and where there was no substantial evidence of the obviousness findings. There were three errors committed by the PTAB. One of them was a claim construction error regarding the definition or the application or definition of the term remote, sorry, record. The second is a waiver issue where the PTAB improperly found that certain arguments were waived even though they were in patent owner's response. And the third is related to the motivation to combine, which was... What is the claim construction dispute that you think is presented? The claim construction dispute that we believe is presented is with regard to the term communication mode. Okay, communication mode. So where, or is it communication message? Communication mode, Your Honors. Okay, so where did you dispute that at the Board, what the proper construction of communication mode is? Your Honor, we didn't think that was a construction issue. It wasn't presented as a construction issue during the institution decision, in the institution decision. It was only really raised as a construction or appeared to be an improper construction, which this Court must resolve under principles such as O2 micro in the Board's final written decision where they held regarding claim scope that that term excludes photographs. So there's a definition of communication mode right in the specification, is there not? Yes, Your Honor. And seemingly both parties agreed at the Board that that definition was the correct construction of communication mode. Correct? Your Honor, that definition does not on its face exclude the term photograph. Okay, we'll get to that. But am I right that as best as the record reveals, both parties seem to think that the definition and the specification of communication mode was the construction of communication mode? Your Honor, I believe that the positions we put forth were those that were advanced below in the district court from petitioner, or sorry, from patent order, which was at a plain and ordinary meeting. I'm sorry? Which was that it was plain and ordinary meeting, but that there was no actual dispute raised during our meeting. So how can there now be a claim construction dispute that we would review de novo if that's how the case comes up? Your Honor, because the issue regarding claim scope came up during the final written decision where the PTAB held that the scope of the claim excluded photographs. Why is that not a factual finding and application of the construction to the evidentiary record before the Board? Your Honor, because it's a question of claim scope. No one disputes what a photograph really is. It's a question as to whether or not the word recording can be a photograph. And because the Board construed it as initiating or terminating a recording, essentially after saying there were no constructions necessary at the beginning of the final written decision, and then going on to say that initiating and terminating a recording can't be a photograph. Right. So there's a question. It seems like a factual finding. I have a construction that requires to be a communication mode that you initiate and terminate a recording. I now look at what the record is as to what a photograph is, and I find, the Board says, there is no initiation and termination of a recording. Therefore, as a factual finding, a photograph is not a communication mode. Isn't that what happened here? And we review that for substantial evidence. Your Honor, I believe that is a police argument. However, our argument is that the Board improperly did make a claim construction or did perform claim construction, in other words, evaluating the scope of the term. It wasn't evaluating whether a photograph meets the claim. It evaluated the scope of the word recording and said recording can't be instantaneous. That was the Board's reasoning. It wasn't about what a photograph is, what a prior art reference is. This is about the scope of the claim term, and that is something the Court should review. This Court should review because of O2 micro and the necessity to do a claim construction on that term and should review de novo. Even if this Court does not review de novo, there is no substantial evidence that a photograph can't be instantaneous. The evidence in the record is merely just a police expert stating that, whereas everything in the record that's actual proof, the sources of proof, go against that proposition that a photograph can't be instantaneous. In other words, the petitioner below put forth evidence about cameras showing a physical camera where you have an aperture, and the aperture has a timer on it. You hold it down longer, it could have an overexposed photograph. The photograph could be recorded. It doesn't need to be instantaneous. Additionally, and this is... Let me ask you, because time is limited. Let's assume, hypothetically, that we don't buy the argument you've been making for the first five minutes. I mean, this is all under the umbrella of nexus. So that's what we're left with, right? Yes, Your Honor. So what are you left with if we reject either that this is a claim construction issue or under whatever standard we apply, the Board was correct? Your Honor, there are two other issues. One is still with regard to nexus, and that is that the Board improperly found waiver of an argument. And that argument was that there are two modes in the SNAPS application, which, for the record, I don't think anyone's really disputing how SNAPS application works, and that patent owner put forth evidence of commercial success of that application. However, and if the Board failed to consider that evidence of commercial success in its nexus analysis, it merely didn't move forward with it because of a claim construction issue, as we put it, with regard to the definition of the word picture. And second, with regard to this waiver argument, the Board never considered the commercial success of SNAPS application as a secondary consideration on the merits. And so the second argument for the improper waiver argument that the Board made, the Board said that patent owner didn't raise the issue of the multi-SNAP as one of the possible communication modes. Now, we don't think that the appellee disputes that the multi-SNAP is a communication mode or that a video is a communication mode. In fact, I believe they admitted that video is one of the two possible communication modes. It was merely a question as to whether or not it was waived. And we proposed and we put forth in our briefing that it was not waived because the expert in his analysis said that four possible communication modes were photo, in order with commas, photo, video, multi-SNAP, and then one other. And then the expert went on to explain two examples. And this Court's case law under… I think that's at A580. At best for you, it's an ambiguous contention by your expert, isn't it? And isn't it more naturally read what he said was that your expert was calling those four things media messages and not communication modes? I can read you the sentence. The SNAPS application is programmed to select a communication mode for recording the media message, e.g., video SNAP, photo SNAP, long SNAP, or multi-SNAP. Doesn't that suggest he's saying those four SNAPs are media messages? No, Your Honor, because as you go down further into the remaining analysis, he says, for example, and then talks about two such examples where he calls those two things communication modes. And so you take those two propositions together. What's our standard of review on the Board's finding that this argument was waived or forfeited? I believe it's abuse of discretion. So how is it abuse of discretion to read the ambiguity on page 580 as a waiver? Same reason as it was in arguments like Chamberlain where if it was reasonably raised in some form and it's in response to an argument raised for the first time in reply, which was that this photo can't be a communication mode, that the patent donor would be able to respond to that argument raised for the first time by petitioner on reply. It's not like these arguments were developed at the petition stage. This is about giving the patent donor the fair opportunity to respond to petitioner's arguments in its reply. There's one additional argument that we have, which is that the Board failed to consider any of SNAP's own admissions in its SEC filings, in its own patents, sworn statements to the Patent Office with oaths filed about the state of the art and what was and wasn't known. And those issues are exactly on point with patent donors' contention that the claims are not obvious and there is no motivation to combine, and it is merely hindsight that the Patent Office used to find obviousness based on the two references, Araki and Newman. And with that, unless the panel has additional questions, I would reserve the rest of my time. Thank you. Good morning. I know it won't surprise you that I agree with Judge Stark's questions because those are exactly the right questions to be asking. The claimant issue here requires there to be a selection among a number of communication modes. Communication mode was properly defined by the specification itself, and the specification defines the communication mode to be a mode for initiating and terminating a recording of a media message. That wasn't disputed. There is no claim construction issue here. The only question was how to apply photo to that. We also need to take a step back and look at what is a photo, what is a video, what is a multisnap. Those are media messages. You still would have to find a communication mode that can be selected for transmission of each of those messages. Nothing like that happens here. There is zero evidence in the record that there are multiple communication modes, in other words, multiple ways to start recording a message and then to stop recording that same message. Critically, with respect to photo, the Board found and gave credit to Mr. Schmant, the expert, who testified that, in fact, at paragraph 47, which is appendix 1331, unlike recording an audio or video message, taking a still image does not involve initiating and terminating a recording. That's the critical thing here, and that is the substantial evidence on which the Board's decision was made, that as between photo and video, there is no selection of a communication mode because, for photo, there was no initiating and terminating. Therefore, the claim didn't apply. Because that limitation was completely missing for photo versus video, there was no nexus because you couldn't say that there was a coextension between the snap product and the claims. Clearly, I can see how you could see it that way as an application of an agreed-upon claim construction, but help me at least understand why is this not instead properly viewed as a question of claim scope? And the Board, at the last minute, despite the lack of a dispute, said, look, as a matter of claim construction, I'm going to just strike photographs from my construction of communication mode. Again, Your Honor, he did not strike photographs from the construction of communication mode. He found that a communication mode required initiating and terminating. He then said he adopted as persuasive the evidence and arguments made by Petitioner. And we see that on Appendix page 44, where he says, specifically, we agree with Petitioner's persuasive argument that taking a photo is not a communication mode as defined as a mode for initiating and terminating. What principle could you give us to allow us to say why that is a question, a fact question, applying an agreed-upon construction as opposed to saying that's a question of law about claim scope and just whether these claims are broad enough to capture photographs? Well, for one thing, Your Honor, I'm not sure what you mean by what principle can I give you other than you have a definition. The definition is that the communication mode must have initiating and terminating the transfer of information, so a mode for initiating and terminating a recording. The only evidence of record is Mr. Schmantz's declaration, which was credited in the argument by the Board, and Mr. Schmantz's declaration says, unlike recording an audio or video message, taking a still image does not involve initiating and terminating a recording. Now, I would say that perhaps, Your Honor, we might be living in a different world had their expert put in a declaration that said, no, doing a video does in fact have an initiation and a termination, but he did not. So it's unrebutted that the fact that a photo does not have an initiation and a termination, that it is instantaneous, that is a fact which supports the substantial evidence that was used to render that decision. In terms of the secondary argument about a video versus a multi-snap, there was no finding of waiver by the Board. The Board did say that this was a belated argument, but then it went on at length from Appendix 44 all the way down to the bottom of Appendix 45, stating that the evidence of record refuted the new argument. Their argument seems to have been that because a video is different from a multi-snap because it's longer, therefore there's two communication modes. Not true. In fact, the evidence of record about how a video is taken versus how a multi-snap is taken is the exact same communication mode. The impetus, the beginning, the initiation required by a communication mode is to press the indicator button down. The termination happens when the button is released. That's only one mode. There are no other modes given. The only differentiator is in the media message itself. And as Your Honor pointed out, that's exactly what happened at Appendix 580. When quoting their own expert, they indicated that the recording of a media message, e.g., a video snap, a photo snap, long snap, which no one knows what that is, or multi-snap. So here what they're doing is they're trying to conflate the media message with the mode for recording it. But the mode for recording it has to start with an initiation, which here is to press the button down, and end with a termination, which here is only ever seen as release the button. There's only one communication mode. Because there is no selection between communication modes, there can be no nexus, as the Board found, because that's an element that is completely missing in the snap application from the claims. If we agree with the Board there's no presumption of nexus, do we also have to determine whether they proved a nexus? Here, Your Honor, you do not, because here, Your Honor, the same element was found to be missing completely. And so there is no nexus if you find that the element was completely missing. And so here they were trying to say that there is a selection, but there is zero evidence that there is a selection between modes, because there's not one shred of evidence that there are multiple communication modes. And one way you also understand that, and can easily see it, Your Honor, is the specification tells us how to recognize the different types of communication modes. One they view as push to start, which is basically when you hold the button down and you keep talking until your communication is over, much like a walkie-talkie. You press, you speak, when you release, the communication ends. That's described as being particularly useful in column two of the patent for short messages, because you just press in, say hi, and release. The second mode, very different, is called tap to start, but it's not just one tap. It requires two taps. It requires the tap to start, then the recording is made, and then in order to end the recording, something else has to happen. You either have to tap it again, or you have to have functionality that does voice recognition and realizes that your voice has stopped. There still has to be a secondary ending point. Nowhere in any of the evidence are there two ways to start and stop a communication mode, whether it be for photo, video, multi-snap, or anything else. The board's decision was therefore supported by the substantial evidence that a photo was not a communication mode, and that the record evidence cited by appellant itself for arguing that the video and the multi-snap would somehow qualify as two modes was refuted by the actual documentary evidence. The documentary evidence shows when you look at what a video versus a multi-snap is, it's the same mode for starting, and this is at appendix 2900, repeated again at 2901 and 2903 and 2904. You press the button down and you hold it for a video. You keep holding it to make a multi-snap, which is just a longer video, and the same mechanism for ending is when you release it. One communication mode only. And that's the record evidence that the board found was able to refute the arguments, and we see that, Your Honors, at appendix 45, when the board goes through why the, quote, remaining evidence cited to support its belated argument does not support its contentions. It talks about the thinness of simply quoting the language, and when you look at the language itself, it demonstrates that there's only one mode recited. Can I just ask you a housekeeping question before you sit down, which is that you've offered a number of alternative theories in your brief that, as far as I can tell, were not ever cited or adopted by the board. So that's a problem, right? I mean, there's a Chenery problem with us going off on our own with alternative theories, is there not? So to answer Your Honors' question very directly, yes, it is a problem if you go off on theories that the board didn't cite, but here you don't have to. What those theories were were alternative theories presented to the board below. If Your Honors did not find that substantial evidence supported the conclusion, which we absolutely believe it does and did, as I've discussed, those additional theories would still have to be considered,  They would still have to be considered if they needed, and I take your point. If they needed to be considered, it would not be by us in the first instance. It would be in the context of a remand. That's correct, Your Honor, and I'll be brutally honest. One of the reasons that we continued to explain some of those in the briefing was to show Your Honors just how full the record is that even if it went back down, we'd be right back up in front of you. Without anything further, Your Honors, I cede my time. I appreciate your attention. Thank you. Good morning again. I have a few brief responses. First of all, with regard to photographs, I would like to point out that the record is not clear that a photograph can't just be the initiation. A photograph is not initiating and terminating of a recording or that it's not a recording. Petitioner's experts said it wasn't even a recording because it was instantaneous. Now, if we look at Appendix 1770, for example, which is SNAP's own patent, and we cited this type of disclosure both in our brief we called out and the reasons for allowance for SNAP's patent, comparing it to our own reasons for allowance. SNAP says... What page are you on? As an example, I'm giving Appendix 1770,  This is the... This version at 1770 is SNAP's application at the PTO. And it says, A user... And this is the quote, Problematically, a user must determine the optimal mode for recording a given moment before the moment has occurred. And then talks about swapping between photo and video. And throughout the specification, there's at least two other locations where it says record a photograph in SNAP's own patent application. And those are... That's something that SNAP shouldn't be able to rebut as it was stated in its own patent application, signed by its CEO with an oath. Do you have expert support for the idea that a photo could be a recording or could be a communication mode? Your Honor, other than the fact that our expert cited to the photograph as one of the communication modes in paragraphs 80 through 94 of his declaration in comparing it to the product, as I mentioned in my opening time, this was not an issue that was a claim construction issue, an apparent claim construction issue at the time. Had it been the evidence he had where he says that a photo is one of the communication modes, would have at least been sufficient to rebut. Because there's simply nothing on the other side of it other than their expert's statement that a photograph has to be instantaneous to support that proposition. Either that the communication mode should exclude photographs or that a photograph can't meet that limitation with substantial evidence. There's just really no evidence other than their expert's base statement, which should not be allowed to stand. Particularly in view of SNAP's own sworn statements. One last point for Your Honors, is that the Board never analyzed in the connection of Nexus, in the connection of Long Felt Need, in the connection of the obvious analysis for why to combine the Iraqi reference, which was a translation product, with the Newman reference, which was a phone or media product that had hundreds of different modes it could be in, to get you to this idea that you have a single button interface where you could tap it to do one thing or hold it down to do another thing or push to talk to do one or tap to start to do another in the context of sending a media message. And SNAP's own statements that this didn't exist in the art and it was something new are in its own patent on the same topic. It's in the reasons for allowance of SNAP's own patent. It's in SNAP's S1 filing with the SEC saying this was a problem it solved for its customers when they noticed the problem. And that problem is almost identical to the problem mentioned in the 059 and 159 patents. And the PTAB just didn't address that at all. These were statements made by SNAP that they should have to be accountable for that the lower panel here... Was this something you raised in blue in your blue brief? Because I'm not recalling it. Was this an argument made in blue? I believe it was an argument we made around page, I think, 40 or 44 at the end of our section on Nexus. And then we raised it again in our reply brief. It was definitely below before the board. I remember saying these things and I have a citation to it in the record from when I made these points to the PTAB. And it was just simply not addressed at all. This is essentially our last point in our brief that there is no substantial evidence for the motivation to combine. It was done with pure hindsight. And the hindsight was evidenced by the fact that there was nothing in the two references to combine them and that SNAP's own statements were just never addressed by the board. And if you were to take those statements by SNAP for what they're worth, they would actually refute obviousness on the merits and also demonstrate what SNAP alleges is a long-felt need which shouldn't have turned around the definition of the term photograph. The statements itself, problematically a user must determine the optimal mode for recording a given moment before the moment has occurred at the same time as SRK's patent should have been considered. Thank you. Thank you, Your Honor. I think both sides in the case have seen it.